UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARKUS KING-KNIGHT,

                          Plaintiff,

v.                                                              9:25-CV-0317
                                                                (GTS/DJS)
STATE OF NEW YORK; CORRECTION OFFICER
NICHOLAS E. FLEURY; CORRECTION OFFICER
AUSTIN R. MARTIN; CORRECTION OFFICER
JOSHUA S. ALLEN; CORRECTION OFFICER
LUKAS T. BENWAY; CORRECTION OFFICER
LOGAN T. HAYES; SERGEANT JARRED S.
BULLOCK; REGISTERED NURSE BRENDA
HOLCOMBE; REGISTERED NURSE CHRISTY
CONKLIN; PHYSICIAN ASSISTANT COSETTE
WITTY-LEWIS; and JOHN DOE and JANE DOE,
the names John and Jane Doe being fictitious, as the
true names are presently unknown,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

UGO UZOH, P.C.                                        UGOCHUKWU UZOH, ESQ.
   Counsel for Plaintiff
56 Willoughby Street, Third Floor
Brooklyn, NY 11201

HON. LETITIA JAMES                                   PATRICK R. BLOOD, ESQ.
NEW YORK STATE ATTORNEY GENERAL                      Assistant Attorney General
   Counsel for Defendants
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this prisoner civil rights action filed by Markus King-

Knight ("Plaintiff") against the State of New York, Nicholas E. Fleury, Austin R. Martin, Joshua

S. Allen, Lukas T. Benway, Logan T. Hayes, Jarred S. Bullock, Brenda Holcombe, Christy

Conklin, Cosette Witty-Lewis, and John and Jane Doe Defendants, are the following two

motions: (1) Defendant State of New York's motion to dismiss for lack of subject-matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and (2) Defendant Fleury, Martin, Allen,

Benway, Hayes, Bullock, Holcombe, Conklin, and Witty-Lewis' motion to dismiss for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 20, 23.)  For the reasons set forth

below, Defendant State of New York's motion is denied as moot as a result of Plaintiff's

withdrawal of his claims against it,[1] and the other Defendants' motion is granted in part and

denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Original Complaint and Proposed Amended Complaint

Generally, in his original Complaint, Plaintiff asserts four claims arising from his

confinement at Upstate Correctional Facility: (1) a claim of excessive force against Defendants

Fleury, Martin, Allen, Benway, Hayes, and Bullock (the "Officer Defendants") arising from

assaults occurring against him on February 7, 2022; (2) a claim of First Amendment retaliation

against the Officer Defendants arising from his filing of complaints and grievances; (3) a claim

of deliberate indifference against all of the individual Defendants arising from (a) the failure to

---

[1]    In his response to the individual Defendants' motion, Plaintiff expressed that he was
withdrawing his claims against Defendant State of New York with prejudice.  (Dkt. No. 33, at 8.)
Further, in his proposed Amended Complaint (which, as will be discussed below, the Court
grants his request to file) Plaintiff also removes the John and Jane Doe Defendants.  The Clerk of
Court is respectfully directed to update the caption to reflect all of the changes to the parties
made in the Amended Complaint (including Plaintiff's withdrawal of his claims against the John
and Jane Doe Defendants).

provide adequate medical treatment for his injuries related to the assault and (b) acts of sexual abuse and harassment against him by the Officer Defendants; and (4) a claim for failure to intervene as to all of the individual Defendants arising from the actions underlying his other claims.  (Dkt. No. 1.)

Plaintiff has also filed a proposed Amended Complaint that is currently before this Court for consideration.  The claims raised in that proposed Amended Complaint are essentially identical to those raised in the Complaint, although it adds factual allegations in further support of those claims (which are discussed below).  (Dkt. No. 32, Attach. 2.)

### B.    Briefing on the Individual Defendants' Motion to Dismiss[2]

### 1.    Defendants' Memorandum of Law

Generally, in their motion, Defendants make four arguments.  (Djt. No. 23, Attach. 1.) First, Defendants argue that Plaintiff has failed to adequately plead the personal involvement of any Defendant because, other than naming the Defendants and alleging that they are employed at Upstate Correctional Facility, Plaintiff has not identified how these individuals were involved in the alleged constitutional violations.  (*Id.* at 8-10.)[3]

Second, Defendants argue that Plaintiff's Complaint is inadequate also because he uses improper group pleading that fails to differentiate or identify the actions of each individual Defendant.  (*Id.* at 10-12.)

---

[2]    Because, as was discussed above, Plaintiff has withdrawn his claims against Defendant State of New York, the Court will not address that Defendant's motion, which is now moot.

[3]    Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

Third, Defendants argue that Plaintiff's First Amendment retaliation claim should be dismissed because (a) he has not alleged facts plausibly suggesting either the nature of his alleged grievances or the fact that the relevant Defendants were aware of those grievances, and (b) he has not alleged facts plausibly suggesting that there was any causal connection between the alleged grievances and the alleged adverse actions. (*Id.* at 12-13.)

Fourth, Defendants argue that Plaintiff's deliberate indifference claims should be dismissed because (a) again, he has not alleged personal involvement as to each individual Defendant, and (b) he has not alleged facts to plausibly suggest that his "back pain, neck pain, deep gashes to his face, and hearing loss" were sufficiently serious to render a failure to provide treatment constitutionally significant or to plausibly suggest that any of the named Defendants knew of and disregarded an excessive risk to his health or safety. (*Id.* at 13-17.)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition to Defendants' motion, Plaintiff makes five arguments. (Dkt. No. 33.) First, Plaintiff argues that he has adequately alleged personal involvement as to each of the individual Defendants because he has stated that the "officer defendants" and the "nurse defendants" (terms which have been specifically defined in the Complaint) engaged in certain conduct, and it is "not inconceivable" for the relevant individual Defendants in those groupings to have all participated in the alleged assault and/or denial of medical care. (*Id.* at 13-15.)

Second, Plaintiff argues that each named Defendant is explicitly implicated in one or more of the relevant claims, and it was not improper to identify the Defendants in groupings where (as here) all of those grouped Defendants are alleged to have engaged in the relevant conduct. (*Id.* at 16-18.)

4

Third, Plaintiff argues that he has adequately pleaded a claim of First Amendment retaliation because (a) the filing of lawsuits or grievances constitutes protected conduct, (b) the alleged assault by the officers qualifies as an adverse action, and (c) there is a causal connection between Plaintiff's protected activity and the alleged assault. (*Id.* at 18-22.)

Fourth, Plaintiff argues that he has stated a claim for deliberate indifference because he has plausibly alleged that he suffered a sufficiently serious condition that Defendants failed to treat. (*Id.* at 22.)

Fifth, Plaintiff argues that, should the Court find the Complaint to be deficient, he should be permitted to file the proposed Amended Complaint to cure those defects. (*Id.* at 22-24.)

### 3. Defendants' Reply Letter-Brief

Generally, in their reply letter-brief, Defendants make two arguments. (Dkt. No. 36.) First, Defendants argue that Plaintiff cannot amend his Complaint as a matter of right pursuant to Fed. R. Civ. P. 15 because he did not move to amend within 21 days of when Defendants filed their motion, and therefore Plaintiff requires permission from this Court to amend. (*Id.* at 1-2.) Defendants further argue that Plaintiff's motion to amend is not compliant with this District's Local Rules because he has not submitted a redline/strikeout version of the proposed Amended Complaint with his motion. (*Id.* at 2.)

Second, Defendants argue that Plaintiff's motion to amend the Complaint should be denied as futile because the proposed amendments do not cure the defects identified by Defendants' original arguments. (*Id.* at 2.)

### 4. Plaintiff's Supplementation of His Opposition to Defendants' Motion

After briefing on Defendants' motion had closed, Plaintiff filed (without prior leave of

the Court) both an unsigned copy of the proposed Amended Complaint and a "marked-up copy"

(i.e., a redline/strikeout version) of his proposed Amended Complaint.  (Dkt. No. 37.)  Out of

special solicitude to Plaintiff as a civil rights litigant, the Court has accepted this filing.

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204,

211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

8

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[4]

---

[4]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

III.     **ANALYSIS**

   A.     **Whether Plaintiff's Original Complaint Has Met the Requirements of Fed.
           R. Civ. P. 8**

After careful consideration, the Court answers the above question in the affirmative for

the reasons stated in Plaintiff's opposition memorandum of law.  *See, supra*, Part I.B.2 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading that states a claim

for relief must contain "a short and plain statement of the grounds for the court's jurisdiction," as

well as "of the claim showing that the pleader is entitled to relief," and a "demand for the relief

sought."  Fed. R. Civ. P. 8(a).  "Courts have found that a complaint that 'relies on group pleading

and fails to differentiate as to which defendant was involved in the unlawful conduct is

insufficient to state a claim.'"  *McArdle-Bracelin v. Congress Hotel, LLC*, 20-CV-0861, 2022

WL 486805, at *6 (N.D.N.Y. Feb. 17, 2022) (McAvoy, J.) (quoting *Stewart v. Hudson Hall LLC*,

20-CV-0885, 2020 WL 8732875, at *7 [S.D.N.Y. Oct. 19, 2020]).  "The purpose of this standard

it to 'give each defendant fair notice of what the plaintiff's claim is and the ground upon which it

rests,'" and "[a] complaint fails this standard when the pleading 'lumps all defendants together in

each claim and provides no factual basis to distinguish their conduct.'"  *McArdle-Bracelin*, 2020

WL 8732875, at *6 (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 [2d Cir. 2001])

(internal alterations omitted).  "Dismissal pursuant to [Rule 8] 'is usually reserved for those

cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that

---

defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

its true substance, if any, is well disguised.'" *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 [2d Cir. 1988]).

Defendants argue the manner in which Plaintiff has pleaded the allegations here violates Fed. R. Civ. P. 8 through the use of group pleading. However, in his original Complaint, Plaintiff expressly provides a factual basis to distinguish between the conduct of the "defendant officers" (defined as "Defendants Fleury, Martin, Allen, Benway, Hayes, and Bullock") and the conduct of the "nurse defendants" (defined as "Defendants Halcombe, Conklin, and Witty-Lewis"). (Dkt. No. 1, at ¶¶ 17-18; *see also* Dkt. No. 32, Attach. 2, at ¶¶ 16-17.) Of note, related to his excessive force and retaliation claims, Plaintiff alleges that it was the "defendant officers" (and not the "nurse defendants") who failed to investigate his grievances, threatened to harm him, and later assaulted him. (Dkt. No. 1, at ¶¶ 29-33; *see also* Dkt. No. 32, Attach. 2, at ¶¶ 30-35.) Granted, a closer question is presented by the fact that, in support of his deliberate indifference claim in his original Complaint, Plaintiff alleges that the "nurse defendants" conspired with the "defendant officers" to deny him treatment (arguably blurring the distinction between the conduct of one group and that of the other). (Dkt. No. 1, at ¶¶ 36-37.) However, the distinction between the officers and nurses remains. (*Id.*)[5]

Under the circumstances, the Court has difficulty finding that the original Complaint (especially when read in the light most favorable to Plaintiff) "provides no factual basis to

---

[5]     Furthermore, in support of this claim in his proposed Amended Complaint, Plaintiff further alleges that the conduct of the "nurse defendants" consisted of (1) "work[ing] in cahoots" with Defendant Bullock "to sidestep or completely omit the documentation of plaintiff's more serious injuries in his medical records," and (2) being "directed" by Defendant Bullock not to "fix . . . up" Plaintiff or "provide him with proper medical care and/or treatment." (Dkt. No. 32, Attach. 2, at ¶¶ 38-41.)

distinguish the[] conduct [of Defendants]" for purposes of *Atuahene v. City of Hartford*, 10 F.

App'x 33, 34 (2d Cir. 2001).

For the above reasons, Defendants' motion to dismiss based on the use of group pleading

is denied.

### B.    Whether Plaintiff's Original Complaint Has Sufficiently Alleged the Personal Involvement of the Individual Defendants

After careful consideration, the Court answers the above question in the affirmative as to

all the Officer Defendants for Plaintiff's Eighth Amendment excessive force and First

Amendment retaliation claims, but in the negative as to all Defendants for Plaintiffs' Eighth

Amendment deliberate indifference to medical needs claim for the following reasons.

For claims brought pursuant to 42 U.S.C. § 1983, "personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award for damages." *Moffitt v. Town of*

*Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991).  To show personal involvement, "a plaintiff must

directly plead and prove that 'each Government-official defendant, through the official's own

individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d

Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *William v. Cnty. of Cayuga*, 24-CV-1055, 2025 WL

2636142, at *4 (N.D.N.Y. Sept. 12, 2025) (Coombe, J.) ("A plaintiff must 'allege a tangible

connection between the acts of a defendant and the injuries suffered.'") (quoting *Bass v. Jackson*,

790 F.2d 260, 263 [2d Cir. 1986]).

Beginning with his Eighth Amendment excessive force claim, Plaintiff has alleged the

following involvement by Defendants Fleury, Martin, Allen, Benway, Hayes, and Bullock in his

original Complaint: (a) "[o]n or about December 2021, at approximately 2:00 p.m., upon

returning the plaintiff to his cell, defendant officers forcibly pushed him inside his cell and

outside of the range of the surveillance camera and gave him a severe beating with their fists and objects while he remained handcuffed"; (b) "[i]n addition to the physical assault, defendant officers verbally, racially, and sexually assaulted the plaintiff by, among other things, using racial epithets and forcibly grabbing, squeezing, and fondling his private areas"; (c) "[f]ollowing the initial beating, plaintiff was removed to a holding pen where he was further assaulted by defendant officers"; and (d) "Plaintiff was caused to sustain serious injuries including, but not limited to, back pain, neck pain, deep gashes to his face, and a hearing loss." (Dkt. No. 1, at ¶¶ 31-34.) As discussed above related to Defendants' Rule 8 argument, the Complaint explicitly defines the term "defendant officers" as meaning Defendants Fleury, Martin, Allen, Benway, Hayes, and Bullock. (Dkt. No. 1, at ¶ 17; *see also* Dkt. No. 32, Attach. 2, at ¶ 16.)

Granted, Plaintiff's original Complaint draws no distinctions between the roles of each of the "defendant officers" during the alleged assaults. (*See generally* Dkt. No. 1.) However, prisoners need not always identify with precision which specific corrections officer committed which specific act against him when multiple officers were present during an alleged assault. *See, e.g., McDay v. Eckert*, 20-CV-0233, 2021 WL 4994093, at *7 (W.D.N.Y. June 25, 2021) ("At this stage, a plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene.") (internal quotation marks omitted) (citing cases).

Simply stated, because his factual allegations can be liberally construed as plausibly alleging that all Officer Defendants engaged in the alleged assault, and because it is plausible that all six of the Officer Defendant could have assaulted Plaintiff in the manner alleged, Plaintiff was not required to provide further specificity in order to allege the personal involvement of all

13

these Defendants. The Court expresses no opinion, however, with regard to how a failure to identify which Officer Defendant did what during the alleged assaults would fare on a motion for summary judgment.

Turning to his First Amendment retaliation claim, Plaintiff has alleged the following involvement by Defendants Fleury, Martin, Allen, Benway, Hayes, and Bullock in his original Complaint: (a) "[d]uring the period while he was incarcerated at Upstate, and almost during the entire period of his wrongful incarceration, the plaintiff usually sought to assert his rights, and did file multiple grievances complaining about several issues including, but not limited to, the conditions of his confinement and the deprivation of his rights"; (b) "[o]n or about August 6, 2021, the plaintiff, in addition to other grievances, complained that several correctional officers worked in concert with unknown individuals to cut and assault him inside his cell"; (c) "Plaintiff did subsequently file grievances complaining that defendant officers failed to investigate his grievances and, instead, are physically abusing him and/or are conspiring with other individuals to assault and physically abuse him"; (d) "[i]n or about December 2021, defendant officers began threatening the plaintiff with serious bodily harm warning that he was "going to get it" and that they were "out for him"; and (e) on February 7, 2022, the Officer Defendants engaged in the assault described previously. (Dkt. No. 1, at ¶¶ 27-33.)  As discussed above, Plaintiff has alleged facts plausibly suggesting that the "defendant officers" (as that term is defined in the Complaint) assaulted him after he submitted multiple grievances, including grievances specifically about conduct of those Officer Defendants, and that the assault was the retaliatory action. (Dkt. No. 1, at ¶¶ 27-29, 47.)  Plaintiff has therefore sufficiently alleged that the relevant Defendants were personally involved in events giving rise to his retaliation claim.  However, again, the Court

14

expresses no opinion with regard to whether this claim would survive a motion for summary judgment.

Finally, as to his Eighth Amendment deliberate indifference claim, Plaintiff alleged the following in his original Complaint: (a) he was transferred to the correctional facility's emergency room and, "[w]hile at the emergency room, defendant officers conspired with the nurse defendants to deny plaintiff the treatment needed to remedy his serious medical conditions"; (b) "[d]efendant officers and the nurse defendants" denied this treatment specifically by "refus[ing] to provide the plaintiff with proper medical care or treatment;" and (c) Defendant Bullock was a sergeant (and thus superior in rank to the other Defendant Officers). (Dkt. No. 1, at ¶¶ 12, 34-37.)  These factual allegations are admittedly thin.[6]

Unlike the allegations related to the other claims, these allegations are simply too vague and conclusory to plausibly suggest that any of the Defendants were personally involved in this violation of his constitutional rights.

For these reasons, the Court finds that Plaintiff's original Complaint has alleged facts to plausibly suggest that the Officer Defendants were personally involved related to his Eighth Amendment excessive force and First Amendment retaliation claims, but that he has not alleged facts to plausibly suggest that any of the individual Defendants were personally involved in the Eighth Amendment deliberate indifference claim as to his medical needs.

---

[6]    Granted, in his proposed Amended Complaint, Plaintiff elaborates on these factual allegations, adding the following: (1) that Defendant Bullock "supervised" the other Defendant Officers, (2) that he was "attended to by the nurse defendants" while in the emergency room, and (3) that Defendant Bullock "directed" the Nurse Defendant "not to "fix . . . up" Plaintiff or "provide him with proper medical care and/or treatment."  (Dkt. No. 32, Attach. 2, at ¶¶ 37, 39-40.)  Those new factual allegations will be discussed below in Part III.D. of this Decision and Order.

### C.     Whether Plaintiff Has Stated a Claim for First Amendment Retaliation

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 [2d Cir. 2001]); *see also Dayter v. Fallon*, 19-CV-0301, 2019 WL 1762583, at *5 (N.D.N.Y. Apr. 22, 2019) (Kahn, J.) ("To plead a First Amendment retaliation claim under § 1983, a prisoner must allege that he engaged in conduct protected by the First Amendment that motivated the defendant-official to retaliate against him.") (citing *Gill v. Pidlypchak*, 389 F.3d 379, 380 [2d Cir. 2004]). "It is well-settled that filing a grievance is constitutionally protected conduct." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 282 (N.D.N.Y. 2018) (Hurd, J.) (citing *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 [2d Cir. 2001]; *Graham v. R.J. Henderson*, 89 F.3d 75, 80 [2d Cir. 1996]). That a defendant's actions were motivated or substantially caused by the exercise of a protected right can be pleaded through allegations of conduct or statements "that may be viewed as directly reflecting the alleged retaliatory attitude," or "indirectly through a showing that the protected activity was followed closely by the adverse action." *Capogrosso v. Gelbstein*, 18-CV-2710, 2019 WL 4686448, at *10 (E.D.N.Y. Sept. 25, 2019) (citing *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 [2d Cir. 2015]; *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 [S.D.N.Y. 2011]). "A plaintiff has standing if he can show *either* that his speech

16

has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160.

In the Complaint, Plaintiff alleges the following: (a) "[d]uring the period while he was incarcerated at Upstate, and almost during the entire period of his wrongful incarceration, the plaintiff usually sought to assert his rights and did file multiple grievances complaining about several issues including, but not limited to, the conditions of his confinement and the deprivation of his rights"; (b) "[o]n or about August 6, 2021, the plaintiff, in addition to other grievances, complained that several correctional officers worked in concert with unknown individuals to cut and assault him inside his cell"; (c) "Plaintiff did subsequently file grievances complaining that defendant officers failed to investigate his grievances and, instead, are physically abusing him and/or conspiring with other individuals to assault and physically abuse him"; (d) "[i]n or about December 2021, defendant officers began threatening the plaintiff with serious bodily harm warning that he was 'going to get it' and that they were 'out for him'"; and (e) "[o]n February 7, 2022, at approximately 2:00 p.m., upon returning the plaintiff to his cell, defendant officers forcibly pushed him inside his cell and outside the range of the surveillance camera and gave him a severe beating with their fists and objects while he remained handcuffed." (Dkt. No. 1, at ¶¶ 27-31.) He further alleges that the assault "caused [him] to sustain serious injuries including, but not limited to, back pain, neck pain, deep gashes to his face, and a hearing loss." (*Id.* at ¶ 34.)

These allegations are sufficient to plausibly suggest that (a) beginning in August of 2021, Plaintiff exercised his First Amendment rights in the form of submitted grievances, including specifically complaining that the Officer Defendants failed to investigate his grievances and were physically abusing him or conspiring with others to physically abuse him, (b) the Officer

17

Defendants' actions in engaging in the alleged assault in February 2022 were motivated by his exercise of his rights given the allegations that they told him they were "going to get him" or were "out for him" following his complaints and the temporal proximity between when he filed his complaints, when the Officer Defendants made such statements, and when the alleged assault occurred, and (c) Plaintiff was injured by the officer Defendants' actions.

For the above reasons, Defendants' motion to dismiss Plaintiff's claim for First Amendment retaliation is denied.

### D.    Whether Plaintiff's Original Complaint Has Stated a Claim for Deliberate Indifference to His Serious Medical Needs

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Part I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

The Eighth Amendment protects incarcerated prisoners from the infliction of cruel and unusual punishment, including where officials are deliberately indifferent to the serious medical needs of a prisoner.  "'The standard of deliberate indifference includes both subjective and objective components.'"  *Mallet v. New York State Dep't of Corrs. and Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]). To meet the objective component for the purposes of a motion to dismiss, a plaintiff must allege facts plausibly suggesting that, "while he was incarcerated, he suffered from a medical condition that is, 'in objective terms, sufficiently serious,'" which has been defined as "a 'condition of urgency that may result in degeneration or extreme pain,' . . . that 'significantly affects daily activities,' or that involves 'chronic and substantial pain.'"  *Mallet*, 126 F.4th at 132 (quoting *Chance*, 143 F.3d at 702; *Brock v. Wright*, 315 F.3d 158, 162 [2d Cir. 2003]).  Such condition

18

"need not be 'life-threatening' or 'at the limit of human ability to bear,' but it must be more than simply 'uncomfortable and annoying.'" *Mallet*, 126 F.4th at 132 (quoting *Brock*, 315 F.3d at 163).

To meet the subjective component, a plaintiff must allege facts plausibly suggesting that the defendant's acts or omissions "'evince[] a conscious disregard of a substantial risk of serious harm.'" *Mallet*, 126 F.4th at 132 (quoting *Darby v. Greenman*, 14 F.4th 124, 128 [2d Cir. 2021]). Specifically, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Darby*, 14 F.4th at 128 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

As discussed above related to the issue of personal involvement, Plaintiff's allegations in the Complaint related to this claim are sparse, alleging in a conclusory manner that the Officer Defendants and the Nurse Defendants refused to provide him proper medical care or treatment for his back pain, neck pain, deep gashes on his face, and hearing loss. (Dkt. No. 1, at ¶¶ 34-37.) Even assuming that Plaintiff has sufficiently alleged personal involvement related to this claim (which, as discussed above, the Court has found that he has not) and that his somewhat vague allegations of injuries constitute sufficiently serious medical conditions, Plaintiff has offered no factual allegations plausibly suggesting what necessary medical treatment Defendants denied him, much less provided any non-conclusory allegations that would plausibly suggest that Defendants acted with the required state of mind necessary to plead such a claim. (*See* Dkt. No. 1, at ¶ 51 [alleging, as to state of mind, only that "[t]he individual defendants denied plaintiff the treatment needed to remedy his serious medical conditions and did so because of their deliberate indifference to his need for medical treatment and care"].)

19

For these reasons, the Court agrees with Defendants that Plaintiff's claim of deliberate indifference to his medical needs in his original Complaint fails to state a claim upon which relief may be granted.[7]  Whether that Eighth Amendment claim in his proposed Amended Complaint sufficiently states such a claim is another matter, which the Court will now address.

### E.    Whether Plaintiff Should Be Permitted to Amend His Complaint

Generally, the parties do not present arguments regarding, and the Court finds no noteworthy issue regarding, any of the factors ordinarily considered on a motion to amend, other than the futility of amendment (due to a failure to state a claim).  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

More specifically, the Court finds that, although Plaintiff purports to assert his Eighth Amendment medical indifference claim against all Defendants in his proposed Amended Complaint, the only Defendants against whom he has asserted sufficient allegations regarding personal involvement are Defendant Bullock (who is identified by name as the individual who

---

[7]    The Court notes that Plaintiff also appears to assert a claim of deliberate indifference related to sexual abuse that allegedly occurred during the alleged assault.  (Dkt. No. 1, at ¶¶ 32, 53.)  For the same reasons as discussed related to the excessive force claim, Plaintiff's allegations regarding such a claim plausibly suggest personal involvement by the Officer Defendants, and Defendants have not seemingly raised any arguments seeking to dismiss such claim on the merits.  Because neither party addresses this aspect of the deliberate indifference claim in their papers, the Court declines to assess its merits *sua sponte*, particularly given that other claims in this action survive Defendants' motion.

directed the Nurse Defendants not to treat Plaintiff and worked with them to "sidestep or completely omit the documentation of plaintiff's more serious injuries in his medical records"), and Defendants Halcombe, Conklin, and Witty-Lewis (who are included under the definition of "nurse defendants" in the proposed Amended Complaint as discussed above and who are alleged to have refused to provide Plaintiff with proper medical care and omitted documentation of his "more serious injuries" from his medical records).  (Dkt. No. 32, Attach. 2, at ¶¶ 39-41.)  In other words, although Plaintiff does allege that the "officer defendants" as a collective "conspired with the nurse defendants to deny plaintiff the treatment needed" and "refused to provide the plaintiff with proper medical care or treatment," these allegations are entirely conclusory as to the other Officer Defendants given that Plaintiff specifically alleges that it was Defendant Bullock who engaged in conduct related to denying Plaintiff treatment without specifying what role any of the other Officer Defendants played in that denial.  As a result, any deliberate indifference claim related to denial of medical care against Defendants Fleury, Martin, Allen, Benway, or Hayes must be dismissed for failure to plausibly allege any personal involvement by those Defendants in the alleged denial of medical care because Plaintiff's proposed Amended Complaint does not rectify the defects of pleading identified previously as to those Defendants.

As to the merits of this Eighth Amendment claim, even Plaintiff's proposed Amended Complaint suffers from a certain vagueness that makes it difficult to determine precisely what he is alleging.  For instance, as to the existence of a serious medical condition, Plaintiff alleges that he presented to "the emergency room at Upstate" with "injuries including, but not limited to, back pain, neck pain, deep gashes to his face, and a hearing loss," but he does not allege what impact these injuries had on him other than his allegation that he still had "severe pains" on

February 8, 2022 (the day after the alleged assault and failure to provide treatment). (Dkt. No. 32, Attach. 2, at ¶¶ 36, 42.) He notably does not clarify which of the alleged injuries specifically continued to cause him pain, merely that he experienced pain.

It is further not clear whether the relevant Defendants failed to provide Plaintiff with *any* treatment for these alleged injuries. Specifically, Plaintiff alleges that Defendant Bullock and the Nurse Defendants worked together to "sidestep or completely omit the documentation of plaintiff's more serious injuries in his medical records," which suggests that they may have documented some of his less serious injuries. To the extent that Plaintiff appears to be alleging that the relevant Defendants failed to provide him any treatment even for an injury as obvious as "deep gashes to his face," such allegation seems implausible. However, because Plaintiff's allegations must be taken as true on this motion, the Court finds that the allegations narrowly suggest both the existence of a sufficiently serious medical condition (most notably the "deep gashes" on his face, which certainly could be considered a condition of urgency in light of the bleeding and risk of infection such an injury implies) and that the relevant Defendants were both aware of and deliberately indifferent to such condition(s) in their failure to provide treatment (through his allegation that they intentionally omitted documentation of his more serious injuries from his medical record while also refusing to provide treatment for those same injuries). However, again, the Court expresses no opinion with regard to whether this claim would survive a motion for summary judgment.

For all of the above reasons, the Court permits Plaintiff to amend all of the claims asserted in his original Complaint except his Eighth Amendment claim of deliberate indifference

to medical needs against Defendant Fleury, Defendant Martin, Defendant Allen, Defendant Benway, and Defendant Hayes, which is dismissed.

ACCORDINGLY, it is

ORDERED that the individual Defendants' motion to dismiss (Dkt. No. 23) is **GRANTED in part** and **DENIED in part**; and it is further

ORDERED that Defendant State of New York's motion to dismiss (Dkt. No. 20) is **DENIED as moot**; and it is further

ORDERED that Plaintiff's claims against Defendant State of New York are **DISMISSED with prejudice**; and it is further

ORDERED that Plaintiff's Eighth Amendment claim of deliberate indifference to medical needs against Defendant Fleury, Defendant Martin, Defendant Allen, Defendant Benway, and Defendant Hayes is **DISMISSED**; and it is further

ORDERED that Plaintiff shall sign, file and serve his Amended Complaint consistent with this Decision and Order[8] within **FOURTEEN (14) DAYS** of the entry of this Decision and Order in accordance with L.R. 15.1(c).

Dated:  February 25, 2026
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[8]     While Plaintiff need not revise his proposed Amended Complaint to omit the above-dismissed claims, the Court recommends he do so for purposes of clarity.

23